**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

CHALLENGE TO CONSTITUTIONALITY OF STATE STATUTE

| | |
|---|---|
| RHODE ISLAND HOMELESS ADVOCACY PROJECT, BRUCE FIELDS, FELIX RIVAS, SHAWN BURKHART, CHRISTOPHER PALAZZO, HENRY MELVIN, DAVID ALLEN, and THOMAS HOWELL<br><br>v.<br><br>GINA RAIMONDO, in her official capacity as Governor of the State of Rhode Island, and MICHAEL TONDRA, in his official capacity as Chief of the Office of Housing and Community Development of the State of Rhode Island | C.A. No. 17- |

**VERIFIED COMPLAINT**

**INTRODUCTION**

1. Plaintiff individuals and members of Plaintiff Rhode Island Homeless Advocacy Project are persons subject to the registration requirements of the Sexual Offender Registration and Community Notification Act of the State of Rhode Island, chapter 11-37.1 of the General Laws of the State of Rhode Island, and hereinafter referred to as "SORNA," and have been placed at various "levels" within the meaning of SORNA. Plaintiffs seek declaratory and injunctive relief to prohibit enforcement of §42-11.2-11(c) of the Rhode Island General Laws, enacted on October 5, 2017, and effective January 1, 2018, and hereinafter referred to as "the 10% Restriction," as violative of their rights under the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. §12132, *et seq.* ("ADA"), §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq.* ("the

Rehabilitation Act"), the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*("the FHA"), and 42 U.S.C. §1983.

2. Section §42-11.2-11(c), effective January 1, 2018, of the Rhode Island General Laws provides as follows:

> (c)(1) Any facility that operates in any manner as a homeless shelter and is located on state property that can accommodate up to five (5) homeless individuals shall not permit more than one bed to be utilized by persons registered, or who are required to register, as a sex offender under the laws of this state or of any other jurisdiction.
>
> (2) Any facility that operates in any manner as a homeless shelter and is located on state property that can accommodate not less than six (6) nor more than twenty (20) homeless individuals shall not permit more than two (2) beds to be utilized by persons registered, or who are required to register, as a sex offender under the laws of this state or of any other jurisdiction.
>
> (3) Any facility that operates in any manner as a homeless shelter and is located on state property that can accommodate at least twenty-one (21) and no more than fifty (50) homeless individuals shall not permit more than five (5) of the beds in the facility to be utilized to shelter persons who are registered, or are required to register, as a sex offender under the laws of this state or of any other jurisdiction.
>
> (4) Any facility that operates in any manner as a homeless shelter and located on state property that can accommodate more than fifty (50) homeless individuals shall not permit more than ten percent (10%) of the beds in the facility to be utilized to shelter persons who are registered, or are required to register, as a sex offender under the laws of this state or of any other jurisdiction.
>
> (5) The state shall not establish nor maintain any homeless shelter within a thousand feet (1,000′) of a homeless shelter in existence as of January 1, 2017.
>
> (6) None of the limitations and restrictions in subsections (c)(1) through (c)(5) shall apply to any health care facility.

3. Administration and enforcement of chapter 11.2 of title 42 of the Rhode Island General Laws is lodged in the "executive department" of the State of Rhode Island. Section 42-11.2-8 provides as follows:

> The executive department shall administer the affordable housing opportunity program in a manner that will cause the least permanent displacement of persons occupying existing dwelling units which may be assisted under this chapter.

4. Upon information and belief, the Governor of the State of Rhode Island is the head of the executive department of the State of Rhode Island.

5. Upon information and belief, the Office of Housing and Community Development (OHCD) has been designated by the Governor to administer chapter 11.2. The mission of the OHCD "is to provide opportunities for healthy and affordable housing through production, lead hazard mitigation, and the coordination of the homeless system and implementation of the State's plan to end homelessness."

6. Harrington Hall is a shelter offering overnight beds for men. It has 112 beds. It is located at 30 Howard Avenue, Building #58, Cranston RI on property owned by the State of Rhode Island.

**JURISDICTION AND VENUE**

7. This action is brought pursuant to 42 U.S.C. §1983 for violations of the United States Constitution, the ADA, the Rehabilitation Act, and the FHA. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

8. Venue is properly lodged in the District of Rhode Island pursuant to 28 U.S.C. § 1391(b).

**PLAINTIFFS**

9. Plaintiff RHODE ISLAND HOMELESS ADVOCACY PROJECT ("RIHAP") is a charitable organization advocating for the rights and interests of Rhode Island's homeless and housing insecure population (hereinafter referred to collectively as "homeless"). RIHAP has been in existence since in or about 2010 and was incorporated in or about August 2017.

a. Among the issues of importance to the members of RIHAP are access to public transportation, housing, nightly outreach to homeless on the streets, and access to overnight shelters.

b. RIHAP's members include homeless persons who rely upon access to homeless shelters for overnight accommodation as their only alternative to being forced to sleep or camp overnight on the street.

c. As a direct consequence of the enactment of the 10% Restriction and its implementation effective January 1, 2018, members of RIHAP who had previously been provided overnight shelter at Harrington Hall have been or will be denied overnight shelter at Harrington Hall solely as a consequence of the Hall's statutory obligation to limit overnight beds to registered sex offenders to no more than 10% of its capacity.

d. RIHAP's members include the individual plaintiffs.

e. Members of RIHAP include other individuals similarly situated to the individual plaintiffs, in that they are registered sex offenders, many with disabilities, who have sought and/or expect to seek overnight shelter at Harrington Hall and who will otherwise be forced to sleep or camp overnight on the street.

f. RIHAP brings this action in its representative capacity on behalf of its members, and references to RIHAP as "plaintiff" hereinafter refer to its members.

10. The individual Plaintiffs are all residents of the State of Rhode Island.

11. Each plaintiff, prior to October 5, 2017, had been convicted of a criminal offense within the meaning of §11-37.1-3 of SORNA and is subject to the registrations requirements, including assignment of "level", and other restrictions of SORNA.

12. Plaintiff Bruce Fields is 41 years of age and a member of RIHAP. Fields is a level II sex offender, having been convicted of second degree sexual assault. Fields suffers from both physical and mental health disabilities. He receives medical treatment and counseling in Providence, Rhode Island. Fields has been homeless since his release from incarceration. He has been unable to find permanent housing and instead periodically seeks shelter at Harrington Hall and is sometimes able to stay briefly with a friend whose subsidized housing prohibits him from residing there. Fields has experienced hypothermia in the past from unsheltered homelessness. He has resided periodically at Harrington Hall since September 2016, but has been advised that he will not be able to shelter at Harrington Hall as of January 1, 2018, due to the 10% Restriction.

13. Plaintiff Felix Rivas is 31 years of age and a member of RIHAP. Rivas is a level III sex offender, having been convicted of child molestation. Rivas suffers from acute mental health disabilities and receives medical treatment and counseling. Rivas has been homeless since his release from incarceration. He has been unable to find permanent housing and has been denied shelter at shelters other than Harrington Hall because he is a level III registrant. He has been staying at Harrington Hall for approximately 10 months, but has been advised that he will not be able to shelter at Harrington Hall as of January 1, 2018, due to the 10% Restriction.

14. Plaintiff Shawn Burkhart is 31 years of age and a member of RIHAP. Burkhart is an "unleveled" registrant, having been convicted of sexual assault and failure to register. Burkhart has been homeless since August 2013. He has been unable to find permanent housing and has been forced to rely upon shelters or sleep on the street. He has resided periodically at Harrington Hall for approximately 19 months, but has been advised that he

will not be able to shelter at Harrington Hall as of January 1, 2018, due to the 10% Restriction.

15. Plaintiff Christopher Palazzo is 36 years of age and a member of RIHAP. Palazzo is a Level III sex offender, having been convicted of first degree child molestation in 2004. He suffers from mental health disabilities. Palazzo was released from the ACI on December 16, 2017, but denied entry into Harrington Hall in anticipation of implementation of the 10% Restriction. As a stopgap, Palazzo was able to obtain lodging at a hotel in North Smithfield, Rhode Island. Palazzo's mother is providing payment for a three-week period, after which Palazzo will have no permanent or temporary place to live. He anticipates being homeless by mid-January 2018.

16. Plaintiff Henry Melvin is 28 years of age and a member of RIHAP. Melvin is a level II sex offender, having been convicted of second degree child molestation. Melvin suffers from mental health disabilities and receives counseling. Melvin has been homeless for approximately two years. He has been unable to find permanent housing. Over the last 18 months, he has sheltered at Harrington Hall or outside on the grounds of Harrington Hall in his car. He has previously requested indoor shelter at Harrington Hall, but was advised that there would be no room for him to shelter inside Harrington Hall due to the 10% Restriction.

17. Plaintiff David Allen is 54 years of age and a member of RIHAP. Allen is a level II sex offender, having been convicted of second degree child molestation. He suffers from both physical and mental health disabilities. Allen receives treatment at Riverwood Mental Health Services. He has been homeless since 2004 and has stayed at Harrington Hall for

approximately 20 months. Allen currently resides at Harrington Hall but is subject to future displacement due to the 10% Restriction.

18. Plaintiff Thomas Howell is 59 years of age and a member of RIHAP. Howell is a level III sex offender, having been convicted of first degree sexual assault. Howell suffers from both physical and mental health disabilities. He receives treatment from a visiting physician at Crossroads Rhode Island. He resided at Harrington Hall from September until December 2017, when he was placed in temporary housing. In the absence of permanent housing, he is subject to future displacement and denial of return to shelter at Harrington Hall due to the 10% Restriction.

19. Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP adversely affected by the 10% Restriction, are "persons with disabilities" or persons with a "handicap" within the meaning of the ADA, the Rehabilitation Act, and FHA.

**DEFENDANTS**

20. Defendant GINA RAIMONDO is the Governor of the State of Rhode Island and as such is ultimately responsible for the administration of the Executive Department of the State of Rhode Island, which is charged with administration and enforcement of chapter 11.2 of title 42 of the General Laws of the State of Rhode Island, including the 10% Restriction. Defendant Raimondo is hereinafter referred to as "Governor."

21. Defendant MICHAEL TONDRA is the Chief of the Office of Housing and Community Development of the State of Rhode Island, the agency charged with administration and enforcement of chapter 11.2 of title 42 of the General Laws of the State of Rhode Island,

including the 10% Restriction, by the Governor. Defendant Tondra is hereinafter referred to as "the Chief of OHCD."

22. With respect to all matters complained of herein, the Defendants act or have acted under color of state law within the meaning of 42 U.S.C. §1983.

23. The State of Rhode Island, including its executive department and OHCD, operates programs and activities receiving federal financial assistance with the meaning of the Rehabilitation Act.

24. The State of Rhode Island, including its executive department and OHCD, is a public entity subject to the ADA, which defines public entities as "any State or local government" and "any department, agency, . . . or other instrumentality of a State or local government." 42 U.S.C. § 12131(1).

25. The State of Rhode Island, including its executive department and OHCD, is a state subject to the FHA, which defines "state" to "mean[] any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, or any of the territories and possessions of the United States." 42 U.S.C. § 3602(g).

26. Each Defendant is sued herein in his or her official capacity.

27. Defendants are hereinafter referred to collectively as "the State."

## **STATEMENT OF CLAIM**

28. Upon information and belief, SORNA was enacted in 1996 to require that certain individuals convicted of enumerated offenses be required to register their residence with

the State. SORNA also provided for maintenance of a registration database and, for certain offenders, community notification.

29. Harrington Hall is currently operated by Crossroads Rhode Island under contract with the State of Rhode Island. Before Crossroads, Harrington Hall was operated by the House of Hope for many years.

30. The current and former operators of Harrington Hall have imposed no numerical restriction on the number of registered sex offenders who are provided overnight shelter.

31. Harrington Hall is available to men only and does not admit the individual's family members or significant others.

32. Individuals who shelter at Harrington Hall, including many of the Plaintiffs, have stayed nightly at Harrington Hall for extended periods of time.

33. Harrington Hall has occupancy for 112 beds each night.

34. Application of the 10% Restriction limits the number of beds which can be offered to Plaintiffs to no more than 11 beds each night, even if other beds remain empty.

35. Upon information and belief, but for the need to comply with the 10% Restriction, the current operators of Harrington Hall have no intention of imposing a numerical restriction on the number of registered sex offenders who are provided overnight shelter. A copy of the statement of Crossroads, the operators of Harrington Hall, to the Governor opposing the 10% Restriction and urging her to veto the legislation and the reasons therefor, is attached hereto as Exhibit A and made a part hereof.

36. Enforcement of the 10% Restriction does not increase and will undermine public safety or security.

37. The number of registered sex offenders residing at Harrington Hall has routinely exceeded 10% of the available beds without any increase or experience of re-offenses.

38. Registered sex offenders, including the Plaintiffs, face substantial and systemic barriers to housing, including the following:

a. SORNA prohibits registered sex offenders from residing within 300 feet of schools, making many residences and shelters unavailable;

b. Registered sex offenders are not eligible for subsidized housing.

39. As part of its mission, Harrington Hall provides shelter to individuals and populations, including registered sex offenders and people with active mental health and substance use disorders, who are unable or unsuccessful in their efforts to seek shelter and services elsewhere.

40. Harrington Hall is the shelter of last resort for male homeless registered sex offenders in Rhode Island, whose only other option is to sleep or camp on the streets.

41. Upon information and belief, Harrington Hall has routinely provided overnight shelter to many more than 11 registered sex offenders, including many of the Plaintiffs.

a. For example, on December 27, 2017, there were 32 registered sex offenders provided overnight shelter at Harrington Hall.

b. For example, on December 6, 2017, there were 29 registered sex offenders provided overnight shelter at Harrington Hall.

c. For example, on October 19, 2017, there were 49 registered sex offenders provided overnight shelter at Harrington Hall.

d. The number of registered sex offenders, including the Plaintiffs, seeking overnight shelter at Harrington Hall varies from day to day and typically exceeds 20 individuals.

42. Prior to the passage of the 10% Restriction, Plaintiffs and other registered sex offenders experiencing homelessness have been able to obtain overnight shelter at Harrington Hall on the same basis as all other persons seeking such shelter.

43. Upon information and belief, a substantial majority of individuals experiencing homelessness and/or housing insecurity in Rhode Island are persons with disabilities or handicap within the meaning of the ADA, the Rehabilitation Act, and the FHA. For example, data collected by the Rhode Island Homeless Management Information System in December 2014 reported that 61% of all persons registered as homeless were also disabled.

44. Upon information and belief, a substantial majority of registered sex offenders experiencing homelessness and/or housing insecurity in Rhode Island are persons with disabilities or handicap within the meaning of the ADA, the Rehabilitation Act, and the FHA.

45. The 10% Restriction requires the operators of Harrington Hall to deny access to and equal participation in the overnight shelter program to persons with disabilities, including Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP. Removal or invalidation of the 10% Restriction would constitute a reasonable accommodation which would permit these Plaintiffs full access to the program.

46. The 10% Restriction contains no procedure to apply for a hardship exemption based upon illness, advanced age, financial hardship, disability, or any other reason.

47. As a direct result of the 10% Restriction, many of the Plaintiffs have been or will be denied shelter at Harrington Hall and will be required to sleep or camp on the streets, even when there are beds available to accommodate them and notwithstanding the operator's

willingness to do so, but for the statutory and/or contractual obligation to comply with the 10% Restriction.

48. Being forced into unsheltered homelessness, particularly during the winter months, imposes life-threatening conditions upon the Plaintiffs.

49. Registered sex offenders, including the Plaintiffs, face significant risks of re-incarceration due to inability to comply with registration requirements within their local city or town while experiencing homelessness, especially unsheltered homelessness.

50. Being forced into unsheltered homelessness imposes registration burdens on Plaintiffs which exposes them to great risk that they will be found in violation of SORNA and exposed to criminal prosecution thereunder.

51. Being forced into unsheltered homelessness also will make it more difficult or impossible for some Plaintiffs to access required counseling, medical, substance abuse or other treatment services or to maintain employment.

52. The application of the 10% Restriction imposes additional burdens upon those Plaintiffs with disabilities in their efforts and ability to access shelter, required counseling, medical, substance abuse or other treatment services or to maintain employment.

53. Upon information and belief, persons convicted of sex offenses are generally ineligible for public housing.

54. Upon information and belief, increases in homelessness and transience make it more difficult for law enforcement officials to monitor Plaintiffs.

55. By forcing Plaintiffs into unsheltered homelessness and transience, the 10% Restriction increases their lack of stability and access to community and services, increasing the risk to public safety and the risk of re-offense and recidivism.

56. Upon information and belief, without injunctive relief, given the absence of alternative shelter and winter weather conditions, Plaintiffs will suffer irreparable harm to their emotional, mental and physical well-being, and will be faced with imminent loss of shelter, life-threatening conditions, and increased burdens in complying with parole and probation obligations and other hardships.

57. Upon information and belief, there is no adequate remedy at law for the harm to the Plaintiffs.

58. Upon information and belief, issuance of injunctive relief will preserve the status quo immediately before the implementation of the 10% Restriction.

59. Upon information and belief, there will be no harm suffered by the Defendants if injunctive relief is granted.

60. Upon information and belief, the public interest will be served by allowing Plaintiffs to continue to access available beds in Harrington Hall or other shelters encompassed by the 10% Restriction, and by allowing for better police monitoring of registered sex offenders, as opposed to the unstable and potentially life-threatening conditions of unsheltered homelessness on the streets.

**COUNT I (Denial of Equal Protection)**

61. Plaintiffs incorporate the allegations contained in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62. The Equal Protection Clause of the Fourteenth Amendments to the United States Constitution prohibits the states from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

63. The 10% Restriction discriminates against Plaintiffs on the basis of their status as registered sex offenders without a rational basis.

64. The 10% Restriction deprives Plaintiffs equal protection under the law in violation of the Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

**COUNT II (ADA)**

65. Plaintiffs incorporate the allegations contained in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

66. The ADA, 42 U.S.C. 12101 et seq., prohibits a public entity from denying benefits to individuals because of their disability, or otherwise discriminating against disabled individuals.

67. Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with disabilities are each a "qualified individual with a disability" within the definition of protected persons within the meaning of the ADA.

68. Application of the 10% Restriction has the effect of defeating or substantially impairing the ability of Plaintiffs with disabilities from benefiting from the overnight shelter program at Harrington Hall.

69. As a direct and sole consequence of the 10% Restriction, Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with disabilities, are being excluded, or are threatened with exclusion, from participation in or denied the benefits of the shelter program at Harrington Hall.

70. The operators of Harrington Hall are prevented by the 10% Restriction from waiving the 10% cap on beds for registered sex offenders and thereby accommodating Plaintiffs with disabilities.

71. The 10% Restriction, as applied to exclude Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with disabilities, from access to Harrington Hall, conflicts with the requirements of the ADA and is invalid under the ADA, the Supremacy Clause of the United States Constitution, and 42 U.S.C. §1983.

**COUNT III (Rehabilitation Act)**

72. Plaintiffs incorporate the allegations contained in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

73. Section 504 of the 29 U.S.C. § 701 ("the Rehabilitation Act") states in relevant part that "[n]o otherwise qualified individual with a disability in the United States, as defined in §705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

74. Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with disabilities, fall within the definition of protected persons within the meaning of the Rehabilitation Act.

75. Application of the 10% Restriction has the effect of defeating or substantially impairing the ability of Plaintiffs with disabilities from benefiting from the overnight shelter program at Harrington Hall.

76. As a direct and sole consequence of the 10% Restriction, Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with disabilities, are being excluded, or are threatened with exclusion, from participation in or being denied the benefits of the shelter program at Harrington Hall.

77. The operators of Harrington Hall are prevented by the 10% Restriction from waiving the 10% cap on beds for registered sex offenders and thereby accommodating Plaintiffs with disabilities.

78. The 10% Restriction, as applied to exclude Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with disabilities, from access to Harrington Hall, conflicts with the requirements of the Rehabilitation Act and is invalid under the Rehabilitation Act, the Supremacy Clause of the United States Constitution, and 42 U.S.C. §1983.

**COUNT IV (Fair Housing Act)**

79. Plaintiffs incorporate the allegations contained in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

80. Harrington Hall is a "dwelling" within the meaning of the FHA, 42 U.S.C. §3602(b).

81. The operators of Harrington Hall receive compensation from the State of Rhode Island, among others, to provide dwellings to persons in need of shelter, including Plaintiffs.

82. Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with handicaps, fall within the definition of protected persons within the meaning of the FHA.

83. The FHA defines discrimination against persons with handicaps to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §3604(f)(3)(B).

84. The 10% Restriction requires the imposition of a rule and policy which restricts full access to Plaintiffs with handicaps within the meaning of the FHA.

85. The 10% Restriction, as applied to exclude Plaintiffs Fields, Rivas, Palazzo, Melvin, Allen and Howell, as well as other members of RIHAP with handicaps, from access to residential dwellings at Harrington Hall, conflicts with the requirements of the FHA and is invalid under the FHA, 42 U.S.C. §3615, the Supremacy Clause of the United States Constitution, and 42 U.S.C. §1983.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

(1) Grant temporary and preliminary injunctive relief restraining the State from enforcing the 10% Restriction pending determination on the merits;

(2) After hearing on the merits, issue its declaratory judgment that Rhode Island General Laws §42-11.2-11(c) is unconstitutional and/or invalid and grant corresponding injunctive relief permanently enjoining the State from enforcing the 10% Restriction.

(3) Award Plaintiffs their costs, including reasonable attorneys' fees; and

(4) Grant such other and further relief as the Court deems just and proper.

December 29, 2017

By their attorneys,
Cooperating counsel,
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF RHODE ISLAND

/s/ Lynette Labinger
Lynette Labinger #1645
Roney & Labinger LLP
344 Wickenden Street
Providence, RI 02903
(401) 421-9794 -tel
(401) 421-0132 -fax
labinger@roney-labinger.com

/s/ John E. MacDonald
John E. MacDonald #5368
Law Office of John E. MacDonald, Inc.
One Turks Head Place, Suite 1440
Providence, RI 02903
(401) 421-1440 -tel
(401) 421-1442 -fax
jm@jmaclaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RHODE ISLAND HOMELESS ADVOCACY PROJECT, et al.<br><br>v.<br><br>GINA RAIMONDO, in her official capacity as Governor of the State of Rhode Island, et al. | C.A. No. 17- |

**VERIFICATION**
**DECLARATION OF BARBARA FREITAS**

I, **BARBARA FREITAS**, hereby make the following declaration:

1. I am the Director of the Rhode Island Homeless Advocacy Project ("RIHAP"), one of the named plaintiffs in the above-captioned action.
2. RIHAP has authorized me to review and sign the within Verification of the Complaint on its behalf.
3. I have read the foregoing complaint and it is true and correct to the best of my knowledge, information and belief.

In accordance with 28 U.S.C. §1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/29/17 Barbara Freitas
**BARBARA FREITAS**

Crossroads
RHODE ISLAND
*Breaking homelessness. Repairing lives.*

**Board of Directors**

*Chair*
HON. John J. McConnell, Jr.

*Vice Chair*
Adam Hamblett

*Vice Chair*
Edward O. Handy, III

*Vice Chair*
William F. Hatfield

*Treasurer*
Edwin Santos

*Secretary*
Mary Leahey

*Member at Large*
Julie Duffy, Esq.
Michael Fine, M.D.
Dr. Margaret Vanbree

*Chair Emeritus*
Howard G. Sutton

**Directors**

Nicole E. Alexander-Scott, M.D.
Eileen Howard Boone
Virginia Branch
Dr. Nancy Carriuolo
Barbara Cottam
Florence A. Crisp, Esq.
Gonzalo Cuervo
Jeffrey Dana, Esq.
Karen G. DelPonte, Esq.
Bradford S. Dimeo
Robert DiMuccio
Lawrence Eichler, Esq.
Vera Gierke
David Gilden, Esq.
Scot Jones
Seth Magaziner
Matthew T. Marcello, III, Esq.
Frank Mauran
Chad Mellen
Michael Mello
Marieanne Monte
Terry Moran
James Procaccianti
Dr. Mim Runey
Tony Simon
Aiza Soares
Mark Stewart
Suzanne Turcotte, Esq.
Dr. Margaret M. VanBree
Major Thomas A. Verdi
Patrick Wholey
Gayle Wolf

September 26, 2017

Governor Gina Raimondo
Office of the Governor
82 Smith Street
Providence, RI 02903

Dear Governor Raimondo:

I'm writing today with a concern for the recently passed bill S-897. Unfortunately, the bill passed *disregarding our input and the input of many other professionals regarding the timing and the classification of those impacted.* As the bill *is currently written*, homeless shelters such as Harrington Hall currently managed by Crossroads, will be required to limit the number of individuals who are required to register as a sex offender to no more than 10% of the total beds each night. In the case of Harrington Hall which has 112 beds, this would mean no more than 11 registered sex offenders. The bill does not differentiate between the level of sex offenders, and this is one issue which (we believe must be brought to your attention) we wish to raise our concerns.

Since Crossroads has been contracted to operate HH, and subsequently awarded funds through the DOC to provide discharge planning, case management and housing placement services to level 2 and 3 sex offenders, we have clearly understood that the focus of our efforts and the greater concern of all, has been those individuals who are levels 2 and 3 SO's - those required both to register and for whom public notification is required. Earlier this year, we submitted a proposal requesting additional funds, to enable us to expand our efforts w/DOC and HH, to make a greater impact on the number of level 2 and level 3 sex offenders seeking shelter at HH. Our proposal clearly stated that with a commitment of funds and an allowance of time to engage additional staff and secure appropriate housing units, we would be able to significantly reduce the number of Level 2 and 3 sex offenders at HH. Level 1 SO's were never part of our proposal, nor did we include them in our planning.

We are grateful for the additional funds which have been awarded to us through the DOC, but must point out that the award is $200,000 less than we proposed; the funding is not yet in place due to the delay in the approval of the State budget; and once we can start drawing down on the funds, we need time to ramp up the enhanced program.

**EXHIBIT A**

We believe that since S-897 passed, we will be forced to turn numerous sex offenders away from HH each night, including those considered more at risk for re-offending, the level 2 and level 3 individuals.

Based on all of the above, we respectfully request that you veto S-897. Thank you again.

Sincerely,

Karen A. Santilli
President & CEO
Crossroads Rhode Island